# In the United States Court of Federal Claims

No. 21-1541C
(Filed: October 28, 2021)
(Re-Filed: November 10, 2021)[1]

* * * * * * * * * * * * * * * * * * * * * * * *

ALPINE COMPANIES, INC.,

       *Plaintiff*,

v.

THE UNITED STATES,

       *Defendant*,

   and

INFORMATION SYSTEMS AND NETWORKS
CORPORATION (ISN),

       *Intervenor.*

Bid protest; post-award bid protest; best value determination; Procurement Integrity Act; unequal treatment

* * * * * * * * * * * * * * * * * * * * * * * *

*Jerry Alfonso Miles*, Rockville, MD, for plaintiff.

*Alison S. Vicks*, Trial Attorney, United States Department of Justice, Civil Division, with whom were *Brian M. Boynton*, Acting Assistant Attorney General, *Martin F. Hockey, Jr.*, Acting Director, and *Douglas K. Mickle*, Assistant Director, for defendant. *Julie A. Holvik*, United States Department of Housing and Urban Development, of counsel.

*Damien C. Specht*, Washington, DC, for intervenor, with whom was *James A. Tucker*, of counsel.

---

[1] This opinion was originally issued under seal in order to afford the parties an opportunity to propose redactions of the protected material. The parties agreed that none were necessary; thus it appears in full.

OPINION

This is a post-award bid protest of the Department of Housing and Urban Development's ("HUD" or "agency") decision to award a contract to Information Systems and Networks Corporation ("ISN" or "intervenor") for loan-servicing support services. Plaintiff, Alpine Companies, Inc. ("Alpine"), complains that the agency made a wide-ranging set of errors throughout this procurement, including not evaluating the offerors' proposals accurately and engaging in a faulty Procurement Integrity Act ("PIA") investigation. After a remand, the matter is now fully briefed on cross-motions for judgment on the administrative record, and oral argument was held on October 13, 2021. Because the agency's actions were reasonable, we deny the protest for the reasons set out below.

BACKGROUND

A.   The Solicitation

On August 6, 2020, HUD issued the solicitation at issue, which was then amended twice within the month. The solicitation called for proposals to provide Secretary-Held ("Sec-Held") "mortgage loan servicing while maintaining a high standard of customer service and maximizing recoveries on the loan portfolio." Administrative Record ("AR") 281. While HUD acts "primarily [as] a mortgage insurer," Sec-Held mortgages are mortgages held directly by HUD "as a result of its loss mitigation program and specialized loan programs." AR 275. The required services include acting as a document custodian, being responsible for occupancy certifications, and resolving asset sales issues. The performance period would be one 12-month base period with four 12-month option periods.

The solicitation established that the procurement would be conducted on a best-value basis using full and open competition, subjecting the procurement to the requirements of Federal Acquisition Regulation ("FAR") Part 15 and allowing the Government to choose a proposal that may not be the lowest-priced or highest-rated. The solicitation stated that a Technical Evaluation Panel ("TEP") would evaluate the proposals using the following five factors, each of equal importance: (1) Technical Approach, (2) Quality Control Plan, (3) Management Plan, (4) Past Performance, and (5) Socioeconomic Participation. Price would be evaluated as well, albeit separately from the non-price factors. It would be evaluated for both price and cost reasonableness, unbalanced pricing, and cost completeness. All non-price factors, when considered together, "are significantly more

important than cost or price." AR 401. The Contracting Officer ("CO") would then provide a recommendation to the Source Selection Authority ("SSA"), who would make the award decision.

The non-price factors would be rated adjectively. Technical Approach, Quality Control, and Management Plan's possible scores were Excellent/Very Low Risk, Good/Low Risk, Fair/Medium Risk, Marginal/High Risk, and Unsatisfactory/Very High Risk. Socioeconomic Participation was rated similarly with possible scores of Excellent, Good, Fair, Marginal, and Unsatisfactory. Possible scores for Past Performance were Excellent/Very Low Risk/Very High Confidence, Good/Low Risk/High Confidence, Satisfactory/Medium Risk/Some Confidence, Neutral/Unknown Risk/Neutral Confidence, Poor/Very High Risk/Low Confidence, and Unsatisfactory/Very High Risk/Very Low Confidence. If an offeror had no relevant or recent past performance, then it would receive a neutral rating.

On September 11, 2020, plaintiff, intervenor, and two other offerors submitted their proposals to HUD. Intervenor's and the other two offerors' proposals were evaluated by the TEP in November 2020. The agency then conducted a Responsibility Determination on ISN, and it determined that ISN was a responsible contractor under the FAR and eligible for award. Plaintiff's proposal, however, was not evaluated until February 2021, as the CO had initially misfiled plaintiff's proposal. The CO was made of aware of this mistake prior to award when, on February 3, 2021, Alpine's CEO, April Cooper, emailed the CO for an update on the procurement and informed him of rumors she had heard of improprieties in the procurement.[2] Upon his discovery of the mistake, the CO provided Alpine's proposal to the TEP for a full evaluation.

The TEP found plaintiff's proposal (and the other two non-ISN proposals) to be unacceptable. The TEP assigned plaintiff scores of Unacceptable in Technical Approach, Good in Quality Control Plan, Good in Management Plan, Neutral in Past Performance, and Good in Socioeconomic Participation. The score of Unacceptable in Technical Approach made plaintiff ineligible for award. Under the Technical Approach factor, Alpine received no strengths, 13 weaknesses, 2 significant weaknesses, and 16 deficiencies. The TEP justified its assignments by referencing specific sections of the Performance Work Statement ("PWS") from the RFP, meticulously comparing those sections with their respective

---

[2] *See* Background Section B (discussing Ms. Cooper's allegations).

counterparts in Alpine's proposal, discussing why Alpine did not meet the requirements, and how the failure to meet those requirements impacted HUD. ISN's proposal, meanwhile, received scores of Fair under Technical Approach, Good under Quality Control Plan, Good under Management Plan, Neutral under Past Performance, and Fair under Socioeconomic Participation. The CO and SSA largely agreed with the TEP's conclusions. As the only acceptable offeror, the SSA awarded the contract to intervenor on May 3, 2021.

Following the award of the contract to ISN, Alpine filed an unsuccessful bid protest at the Government Accountability Office on May 10, 2021. *Alpine Cos., Inc.*, B-419831, 2021 WL 2667135 (Comp. Gen. June 8, 2021). On July 2, 2021, the current bid protest was filed with the court.

B. Procurement Integrity Act ("PIA") Investigation

While the evaluations and award process were ongoing, the CO began an investigation into the allegations Ms. Cooper outlined in her February 3, 2021 email. Ms. Cooper had heard rumors that "a company headquartered in Maryland ([she] believe[s] ISN)" was holding itself out to be the awardee. AR 1581. She also heard rumors that this unspecified Maryland-headquartered company was negotiating with the landlord of the incumbent contractor's location "because they are to be awarded" the contract. *Id.* She further alleged that "we have been told some of the incumbent staff working in the Secretary-Held area have been contacted and advised that they should consider working for them as they have been selected as the new secretary held contractor." *Id.* Finally, Ms. Cooper claimed that Alpine had "been advised by several members within HUD that the evaluation of [their] Team Members was not based on the qualification of the company, and that there are concerns in HUD with my selected team members." *Id.* Ms. Cooper did not go into any more specific detail in her email.

The CO thanked Ms. Cooper for bringing this matter to his attention. He said that her concerns "may rise to the level of [PIA] violations" and that he will "investigate this matter in accordance with FAR 3.104-7." AR 1580. The CO then interviewed the members of the TEP, the TEP Chairmen, and the SSA. The only information he received of any potential impropriety was that an employee for the incumbent contractor (and a key personnel for Alpine in its proposal), George Odoi, asked a TEP member about the contract status, but the TEP member said that he could not discuss anything with Mr. Odoi. The rest of the interviews gave the CO no reason to believe that a PIA

4

infraction occurred because all of the interviewees stated that they had not shared any information with any parties outside of the TEP and CO.

The CO then contacted Ms. Cooper, asking for more information about the rumors she had heard. The CO asked her what specific information was relayed, who was told the information, who had furnished the information, and when. Ms. Cooper declined to respond, stating that "[n]one of the employees are interested in providing more information." AR 2746. Instead, she said that she would "drop this issue" and that she was "not interested in pursuing anything against HUD regarding this issue that [she] brought up." *Id.*

The CO thus concluded that no there had been no PIA violation. There was no indication that the SSA or members of the TEP had "spoken to any of the Offerors and notified any Offeror of an apparent awardee." AR 1064. If ISN were "making efforts to prepare for award, that may have been simply an effort to prepare for the possibility of award without the benefit of any specific insider information." *Id.* Furthermore, the information that Alpine had received about its own evaluation had no factual basis. When Ms. Cooper initially emailed the CO with her concerns, Alpine's proposal had not been evaluated at that point, so "there was no information regarding Alpine's proposal for anyone involved in the procurement to share." *Id.* The only potential impropriety was Mr. Odoi's communications with the TEP member, as he was listed in the key personnel for Alpine, but the CO found this conversation to be innocuous.

C. Procedural History

The procedural history in this case is much more robust than is typical for a bid protest. Beginning with a 90-page, largely single-spaced complaint, plaintiff followed the commencement of this protest by filing a number of motions, including a motion for a temporary restraining order ("TRO")/preliminary injunction ("PI") and motions to supplement the complaint and the prior motion for a TRO and PI, each with over 200 pages of exhibits. The motion for a TRO/PI and the motions to supplement were subsequently denied, and we issued a schedule outlining the submission of the AR and motions for judgment on the administrative record (MJARs).

The government submitted the AR on July 21, 2021. The plaintiff then, finding the AR to be deficient, submitted notices to the court of its intent to supplement the record and compel discovery. We subsequently struck the notices from the docket as the Rules of the United States Court of Federal

Claims did not have a provision for the filing of such notices. We then instructed plaintiff that, if it sought leave to supplement the record, "it is instructed to do so by filing one, and only one, comprehensive motion to supplement the record." ECF No. 26.

Plaintiff submitted its motion to supplement the AR and to compel discovery on August 2, 2021. In an August 3, 2021 order, we limited the issue of supplementation and discovery to whether the Responsibility Determination conducted by the agency and PIA investigation warranted supplementation or discovery. Defendant and intervenor opposed plaintiff's motion. Before we could resolve this dispute, and despite our previous order, plaintiff filed a second motion to supplement the AR and to compel discovery. Further, before the plaintiff's motions to supplement the AR had been ruled on, plaintiff submitted a motion for reconsideration of our order limiting the scope of issues to be considered for supplementation.

On August 16, 2021, we issued a ruling on plaintiff's multiple motions. Because we had not yet ruled on plaintiff's motion to supplement the AR or conduct discovery, we struck the second identical motion. We denied plaintiff's motion for reconsideration as well. ECF No. 36 at 7. As for plaintiff's first motion to supplement, we denied supplementation of the AR as to the Responsibility Determination, but we granted it for supplementation of the AR as to the PIA investigation. The agency would supplement the AR with communications between the CO and Ms. Cooper regarding the PIA investigation that had been omitted from the record. *Id.* at 5.

There was, however, an open question about the PIA investigation. For PIA investigations, FAR 3.104-7(a)(1) requires that, "[i]f the contracting officer concludes that there is no impact on the procurement, the contracting officer must forward the information concerning the violation or possible violation and documentation supporting a determination that there is no impact on the procurement to an individual designated in accordance with agency procedures." The CO did not forward his findings to the designated individual, and we noted that as a "potential shortcoming" in our August 16, 2021 order. We then convened a status conference to discuss the issue. ECF No. 36 at 6. The parties agreed to a remand to the agency to allow for further documentation of the PIA investigation and concurrence decision as required by the FAR. During the remand, the agency would:

> [e]xplain and document the agency's consideration of the potential Procurement Integrity Act issue, whether there was

> any impact from any violation of the act, and any appropriate review of or concurrence with those determinations as provided for under FAR § 3.104-7, or to complete all of the steps required by the regulation.

ECF No. 37 at 1. The agency would then supplement the AR accordingly with such information along with the award's "routing history." *Id.*

The AR was then supplemented on August 18, 2021, with the CO's correspondence with Alpine's CEO and interview records, and on September 1, 2021, with the required PIA records, concurrence, and the award's routing history. The parties then submitted the case on cross-motions for judgment.[3] On October 13, 2021, oral argument was held, and we denied plaintiff's motion and granted defendant's and intervenor's motions by short order. Judgment was deferred pending this opinion.

## DISCUSSION

We review bid protests in accordance with the standards of the Administrative Procedure Act. *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345,1350–51 (Fed. Cir. 2004) (quoting *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057–58 (Fed. Cir. 2000). If an agency's decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," then we shall not interfere with it. 5 U.S.C. § 706(2)(A) (2018). In other words, if an agency's decision was reasonable and not in violation of any statute or regulation, then it shall stand. Further, even if an agency commits an error, that error must also be prejudicial to an offeror for the court to consider relief. *Office Design Grp. v. United States*, 951 F.3d 1366, 1373 (Fed. Cir. 2020) (citing *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013)). "To establish prejudicial error, a protestor must show that but for that error, the protestor had a substantial chance of receiving a contract award." *Id.* at 1373–74 (citing *Alfa Laval Separation, Inc. v. United States* 175 F.3d 1365, 1367 (Fed. Cir. 1999)).

---

[3] Plaintiff's first attempt at an MJAR, however, was struck from the docket for its failure to comply with the page limit and formatting requirements of the Rules of the United States Court of Federal Claims. Further, only three days after filing the first MJAR attempt, plaintiff also filed a motion for leave to file a supplement protest while also seeking *another* TRO and PI, which was subsequently denied.

Plaintiff sets forth numerous, often repetitious, bases for this protest. First, plaintiff argues that the agency's PIA investigation, both before and following remand, was insufficient. Next, plaintiff attacks the agency's evaluation of ISN's and Alpine's proposals on a number of fronts and across all evaluation factors. For the reasons below, we find plaintiff's arguments unavailing.

I. The Agency's PIA Investigation Was Reasonable

Plaintiff challenges HUD's PIA investigation generally, alleging that it was faulty, even after remand. We begin with the state of affairs prior to remand.

A. Initial PIA Investigation

Plaintiff claims that the CO's PIA investigation conducted during the procurement was largely a sham. It argues that more parties outside of HUD should have been interviewed. Further, it claims that the CO irrationally asked Ms. Cooper to conduct the investigation for him and that she never withdrew her complaint. We disagree.

The focus of the PIA is whether any improper solicitation information was leaked from the agency. The PIA prohibits present or former federal officials and those acting for or advising the federal government from "knowingly disclos[ing] contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates." 41 U.S.C. § 2102(a)(1) (2018). It also prohibits any person from "knowingly obtain[ing] contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates." *Id.* at § 2102(b)

Here, the CO reasonably began with interviewing employees of HUD who had access to the offerors' information and source selection information: the TEP members, TEP Chairmen, and the SSA. If these individuals did not leak any information, then perforce the PIA was not violated because no information was knowingly disclosed by a federal official or obtained by any person. The CO questioned each individual extensively and in great detail, and he reasonably found that no solicitation or award information had been leaked. There is no requirement that the CO interview everyone involved with the solicitation. He must only act reasonably. The CO reasonably

concluded that, because there was no leaked information from HUD, there could not have been a PIA violation.

Further, when the CO attempted to gain more information on who else potentially had any information relevant to the PIA investigation, Ms. Cooper declined to provide him with that information. Although plaintiff claims that this irrationally placed the onus of the investigation on Ms. Cooper, we fail to see a more reasonable path to find any other relevant information. Ms. Cooper was within her rights to decline to participate further. Having done so, however, the CO found his investigation at a dead end. There was nothing irrational in his decision that no violation had occurred.

### B. Remand

Plaintiff also attacks the CO's review of his investigation conducted during the remand, claiming that he should have investigated beyond HUD based on Alpine's filings during this protest that were "stricken from this case, but not from HUD's hands." Pl.'s MJAR at 4. During the remand, the CO reviewed his investigation notes and findings and reaffirmed his conclusion that there was not even a "possible PIA violation" and that he needed no further information. AR 2675. For reasons outlined in the section above, we find that the CO acted reasonably in his reaffirmation of his investigation.

Plaintiff characterizes the concurrence by the CO's second-level supervisor as arbitrary and asserts that the supervisor was not the correct reviewing official for PIA investigations according to HUD Procurement Handbook 2210.3 and the HUD Acquisition Regulation ("HUDAR"). Plaintiff states that the correct reviewing official was the Agency Ethics Official ("AEO"). Finally, plaintiff claims that the supervisor's review of the CO's investigation was just a cut-and-paste job and that the supervisor should have asked the CO about the investigation.

First, there is no indication that the CO's second-level supervisor was not the proper reviewing authority for PIA investigations. Plaintiff cites the HUDAR (with no pinpoint citation) for the proposition that the AEO is the correct reviewing official for PIA investigations. A search of the HUDAR discloses no such requirement. Plaintiff cites HUD Procurement Handbook 2210.3-53 for the same proposition. However, the pinpoint citation provided by plaintiff only relates to conflict-of-interest issues. The procurement

9

integrity section of the same handbook makes no mention of the AEO being the reviewing authority for PIA investigations.

Finally, the CO's second-level supervisor's concurrence with the CO's investigation was reasonable. It is clear from the supervisor's declaration that he reviewed the CO's detailed investigation notes, report, and review of the investigation. The supervisor clearly explained his reasoning for his concurrence, finding that:

> [T]he CO's investigation determined that none of the Technical Evaluation Panel (TEP) members, contracted [sic] TEP chairs, the Source Selection Authority, nor the CO were aware of any such alleged disclosure prior to it being raised by April Cooper of Alpine Companies, Inc. Therefore, there is no reason to suspect any misconduct or bias by any of members responsible for the award decision.

AR 2772. The supervisor reasonably felt no need to look further into the matter.

II. The Agency's Evaluations of Proposals Were Reasonable

Plaintiff disagrees with the agency's evaluations of both its and intervenor's proposals across all evaluation factors. Because plaintiff's proposal was unacceptable under the Technical Approach factor, we will first examine whether its proposal was unreasonably labeled as unacceptable or whether intervenor's proposal was unreasonably labeled as acceptable. If either is the case, then plaintiff can show it was prejudiced, as no tradeoff was conducted between the two proposals. If neither is true, then plaintiff cannot show prejudice regarding any of the other evaluation factors because it would remain ineligible for award, while intervenor's proposal would remain the only acceptable option.[4]

A. Plaintiff's Proposal Was Reasonably Found to Be Unacceptable

Plaintiff claims that HUD's review of its proposal was "unreasonably prejudicial." Pl.'s MJAR at 16. Further, because "the RFP and Source Selection Plan interweave the technical factors with the factors and

---

[4] Ordinarily, because plaintiff's proposal was found to be unacceptable, it would not be able to show prejudice during this protest. All other proposals besides intervenor's were found to be unacceptable as well, however.

subfactors of the Management and Quality Control Plan," Alpine could not have reasonably received the same scores as ISN in other factors yet been unacceptable under Technical Approach. *Id.* Plaintiff then goes through HUD's description of weaknesses and deficiencies in its proposal, discussing how they were not actually weaknesses or deficiencies. Plaintiff also argues that the tradeoff decision documentation only contains conclusory statements and that a tradeoff analysis was not performed. Once again, plaintiff's arguments are unavailing.

We examine an agency's decision for reasonableness. If the agency's decision was reasonable and not in violation of the law, we cannot disturb it. The TEP's assignment of weaknesses and deficiencies was clearly reasonable. The TEP explained in detail how Alpine's proposal failed to meet the PWS's requirements and how those failures would impact HUD.

In two instances, it is clear on the face of Alpine's proposal that it does not match up with material PWS requirements. First, the PWS required that:

> [t]he Contractor shall prepare, execute, and record releases and/or satisfactions, including any ancillary documents required to complete the release, or facilitate the recordation, not later than ten (10) business days from receipt of a request that a release is required and approved by the COR.

AR 1194. Alpine offered that it would complete the task in 15 business days, clearly inconsistent with the PWS. The TEP understandably found this to be a deficiency as "[t]he inability to meet HUD's timeframe requirement would put other transactions and processes at risk." AR 1195.

For another PWS requirement, when a contractor sends a letter to a servicer or holder outlining missing mortgage or note documents, "a second letter [must be] generated and distributed within five (5) business days after expiration [of that first letter]." AR 306. Alpine proposed to complete the task in 7 business days. The TEP found this to be unacceptable as "[l]ate distribution of the second letter by just two business days would compromise subsequent timeframes that are codified in HUD's standard operating procedures for Partial Claim activities." AR 1195. The deviation would greatly alter HUD's timeline, and HUD could face a "financial impact" from the deviation. *Id.* The TEP reasonably found Alpine's proposal to be materially deficient based on the obvious inconsistencies with the PWS; thus Alpine's proposal was unacceptable and ineligible for award. Overall,

Alpine's arguments amount to nothing more than mere disagreements with the TEP.

Plaintiff's other arguments are dealt with in short order. Plaintiff's argument that it could not possibly receive an unacceptable score in Technical Approach when it did not receive that score in the other factors of its proposal has no basis in logic or in the solicitation. There is no indication in the solicitation that ratings affected one another. Indeed, the solicitation indicates that factors would be evaluated individually. *See* AR 77 ("[**E**]**each individual factor**" would receive a rating (emphasis in original)). Finally, plaintiff's claim that the tradeoff analysis was not clearly documented also does not meet the mark. As stated before, no other proposal besides ISN was acceptable. It was clear to the CO and SSA from the face of Alpine's proposal that it did not meet material requirements in the PWS and that it had numerous other weaknesses and deficiencies. The documentation and tradeoff decision were, therefore, reasonable.

### B. Intervenor's Proposal Was Reasonably Found to Be Acceptable

Finally, plaintiff contends that across all evaluation factors, with the exception of socioeconomic participation, intervenor should have received lower ratings, possibly to the point of being found unacceptable for each factor. In particular, plaintiff claims that intervenor's submission of non-relevant past performance references merited a rating of unsatisfactory and a finding of being non-responsive. Plaintiff also argues that the TEP engaged in unequal evaluations because Alpine's proposal received weaknesses or deficiencies that ISN's did not.

First, plaintiff's claims of unequal evaluations do not hold any weight. To succeed on an unequal evaluation claim, the "protestor must show that the agency unreasonably downgraded its proposal for deficiencies that were 'substantively indistinguishable' or nearly identical from those contained in other proposals." *Office Design Grp. v. United States*, 951 F.3d 1366, 1372. (Fed. Cir. 2020). Plaintiff has not met this standard. For example, plaintiff claims that ISN should have received a deficiency, as Alpine did, instead of a weakness, for PWS Section "5.1.1.2 – [Limited Powers of Attorney]" because there were "programmatic material risks" with ISN' proposal, like Alpine's. Pl.'s MJAR at 25. However, the TEP clearly states that the proposals were different and the problems with the proposals were different. For Alpine, the TEP stated:

> The Offeror does not provide logical and feasible methods for these specific requirements. The Offeror states that it will prepare new LPOAs for the COR signature and identifies that the LPOA will name the Contract Manager and Alternate Contract Manager as the main signatories; however, it does not discuss the recording of revocations or acknowledge its responsibilities in regard to filing costs.

AR 1188. For ISN, the TEP stated:

> While the Offeror discusses its approach to establishing LPOAs and the responsibilities it will fulfill, its logical and feasible methods for designating specific individuals authorized to perform tasks and ensuring it does not re-delegate to non-named individuals are unclear.

AR 1164. These are clearly not "substantively indistinguishable" proposals. Plaintiff simply disagrees with the assignment of weaknesses and deficiencies.

Finally, plaintiff's gripe with the TEP's assignment of a neutral rating for ISN's past performance does not have any basis in the solicitation. ISN provided three references for past performance, but the TEP found none of ISN's past performance relevant for the solicitation and assigned ISN a rating of neutral. Plaintiff contends that, because the solicitation "states that an offeror can receive a Neutral [rating] where the contractor 'stated they had no recent, relevant past performance,'" ISN could not receive a neutral rating because it did not state that it had no recent or relevant past performance; it instead submitted non-relevant references. Pl.'s MJAR at 24 n.4 (quoting AR 1174). That is simply not true. The solicitation clearly states that "[o]fferors that have addressed [past performance] and have no relevant past performance history by the prime, any subcontractors/team members, or substituted key personnel will be rated as Neutral (Neutral Confidence)." AR 397. The FAR also states that "[i]n the case of an offeror without a record of relevant past performance or for whom information on past performance is not available, the offeror may not be evaluated favorably or unfavorably on past performance." FAR 15.305(a)(2)(iv). The TEP followed the solicitation and FAR in its assignment of neutral to ISN for past performance. Overall, plaintiff has not demonstrated how the TEP's evaluation of ISN was irrational; it only presents disagreements with that evaluation.

CONCLUSION

Plaintiff argues that HUD made a litany of errors in this procurement, but its arguments have no basis in the record. The agency acted reasonably in its PIA investigation and its evaluation of proposals. Accordingly, plaintiff's protest is denied. The Clerk of the Court is directed to enter judgment for defendant. No costs.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge